# Representation of Government Employees in Cases Where Their Interests Diverge from Those of the United States

The Attorney General is authorized to represent the personal interests of government employees sued in their official capacities if it will serve the interests of the United States.

Even if adequate representation of an employee's personal interests in a lawsuit requires the making of an argument that conflicts with a governmental position, such representation may still serve the interests of the United States.

Where the personal interests of employee-defendants conflict with the interests of the United States, as would be the case if they were to advance an argument that would support a claim against the United States, it would be inappropriate for the Attorney General either to represent them directly or to finance their representation by private counsel.

If the personal interests of employee-defendants potentially conflict with the interests of the United States, the Attorney General may still represent them, if they wish him to do so, without implicating the ethical rule against representing differing interests of multiple clients.

March 27, 1980

## MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL, CIVIL DIVISION

You have requested our views on two representation questions that arose on appeal in a civil case in the Seventh Circuit, *Hampton, et al.* v. *Hanrahan, et al.*, No. 77-1698.* We gave you oral advice with respect to both questions. This memorandum sets out our thinking in greater detail.

At the trial, the Department of Justice (DOJ) represented three federal defendants, all of them agents or former agents of the Federal Bureau of Investigation (FBI) who are accused of having assisted the State of Illinois in a lethal and allegedly unlawful "raid" against Black Panthers in Chicago in 1969. DOJ defended the case on the merits, won a directed verdict at the close of the plaintiffs' evidence, and suffered a reversal on appeal when the Seventh Circuit remanded the case for a new trial. The Seventh Circuit held that the plaintiffs' evidence was sufficient to go to the jury.

---

*Note: The court of appeals decision in *Hampton* v. *Hanrahan* is reported at 600 F.2d 600 (7th Cir. 1979). Ed.

528

If the Seventh Circuit had simply remanded the case, no representation problem would have arisen. The Civil Division believes that the case is clearly one in which it is necessary and proper under our Representation Guidelines [1] for the government to provide a defense on the merits. In connection with the remand, however, the Seventh Circuit entered an order making an impressive award to the plaintiffs (in the amount of $90,000 plus) for attorney fees incurred by them in connection with the appeal; and in its order the court seemed to say that the award would be collected, not from the defendants personally, but from the State of Illinois and the United States (the United States paying one-third of the total). We note in passing that the United States is not a party to this action, although the federal defendants have apparently been sued in their "official" as well as their "personal" capacities.

The representation problem arises because (1) this Department has traditionally taken the position that the United States cannot be required to pay attorney fees under the statute upon which the Seventh Circuit relied, 42 U.S.C. § 1988, and (2) the defendants may perceive that it is in their interest to support the contrary view. In other words, to reduce their own liability or potential liability, they may wish to argue that the fee award may be collected from the United States.

Because of the possibility of a conflict between the government's position and the position the defendants may wish to take with regard to the fee award issue, the Civil Division has advised the defendants that it may be necessary to make some alteration in the representation arrangement. In particular, the Civil Division has said: (1) that to vindicate the government's interest, the United States will request the Seventh Circuit to clarify its order; (2) that the United States will pursue appropriate remedies in the Supreme Court if the Seventh Circuit refuses to abandon the position it seems to have taken with regard to the liability of the United States; (3) that the Department will represent the defendants with regard to all aspects of the case (arguing both that the directed verdict should have been allowed to stand and that fees were not properly awarded either against the defendants or against the United States) if the defendants will agree to representation on these terms, and will agree as well that the DOJ attorneys will be free to support the view that the fee award cannot in any event be taxed against the United States; (4) that the defendants should consult private counsel for advice as to how to proceed; and (5) that if they wish to pursue an argument contrary to the government's position on the fee award issue, they must retain private counsel for that purpose.

---

[1] *See* 28 C.F.R. § 50.15. A revised version of these guidelines exists but has not yet been printed in C.F.R. All references to the "Representation Guidelines" in this memorandum are references to the revised version. [NOTE: The revised Representation Guidelines were published in the Code of Federal Regulations in substantially unchanged form in 1982. Ed.]

The Civil Division has advised the defendants that the Department cannot pay for legal services rendered by private counsel on their behalf in advancing arguments either in the Seventh Circuit or in the Supreme Court inconsistent with the government's view that § 1988 does not authorize awards against the United States.[2]

In the midst of this entangled state of affairs, you have requested our opinion on the following questions: First, is the Civil Division correct in its view that this Department has no authority to retain private counsel to argue in court on the defendants' behalf that § 1988 authorizes fee awards against the United States? Second, assuming the defendants do not wish to pursue such an argument, would it be ethical for the Department to continue to represent them under the terms described in (3) above?

## I.

In a series of recent opinions this Office has wrestled with the general question of the Attorney General's authority to represent government employees in civil cases. Those opinions turn upon a number of considerations, but they proceed from one basic proposition: The general statutes that define the Attorney General's litigation function (28 U.S.C. § 515 *et seq.*) authorize him to defend government employees against claims arising against them for conduct in the course of their employment, even in cases in which the relief sought by the claimant will not bind the Treasury of the United States or direct the officers of the United States in the performance of their duties. In other words, these general statutes authorize the Attorney General to defend the government employees against claims affecting their *personal* interests— i.e., claims against their property or against their liberty or reputations (e.g., state criminal prosecutions).

The rationale for this interpretation of the Attorney General's function is straightforward: If an employee is sued personally for something he did or omitted to do in the course of his employment, the United States may well have an interest in establishing that his conduct was lawful and in relieving him of the expense of retaining an attorney, provided the act or omission of which he is accused was a normal and

---

[2] The defendants may of course decide not to argue that the award may be collected from the United States. The legal support for such an argument is not ironclad, and in any case the defendants may conclude that they stand a better chance of defeating the award if they can show that it cannot be collected from a deep pocket, the Treasury of the United States. We cannot of course anticipate what the defendants may do or what advice they may receive from private counsel.

We note in passing that in some special circumstances the Civil Division, before making a final representation decision, finds it necessary to retain and pay private counsel to consult with the employee in question to determine whether or not there is in fact or law a conflict of interest that would preclude representation by this Department. This practice is reasonably incident to the Attorney General's basic litigation function, since to represent personal interests he must first determine whether they coincide with or diverge from the interests of the United States. It may be appropriate to follow this practice in the present case with regard to consultation by the defendants with private lawyers over the question of how they should proceed.

necessary part of his job. In other words, the interests of the government and the personal interests of the employee may coincide. Accordingly, since the relevant statutes provide that the Attorney General may conduct any litigation in which the United States is "interested," the Attorney General is authorized by statute to appear in proper cases to represent the personal interests of officers and employees who are sued in their personal capacities. Where private and public interests coincide, the representation of private interests is tantamount to representation of the interests of the United States.

This conception of the Attorney General's function, which we reaffirm, is reflected in the Representation Guidelines. The Guidelines provide that, when a government officer or employee is sued personally for something he did or omitted to do in the course of his employment, the Attorney General will defend him, if it can be determined that a defense of his personal interests will serve the interests of the United States.

In the typical case, the Attorney General represents government employees through attorneys and assistants regularly employed in the Department or in the U.S. Attorneys' Offices; but with increasing frequency in recent years the Attorney General has retained private lawyers to represent government employees. Why has this happened? The basic principles of personal representation are sound in theory, but they are not easy to follow in practice. Cases arise in which: (1) a decision regarding representation must be made *before* it is known whether the interests of the government coincide with the personal interests of the defendant; (2) conflicts among multiple *personal* interests make it awkward for this Department to represent them all; (3) an identity of interest between the government and an individual which is present at the outset of a case evaporates in the course of litigation; or (4) a community of interest regarding core issues is disrupted by a divergence of interest regarding some peripheral point. As we understand it, the practice of retaining private lawyers to defend government employees arose as the Department attempted to deal justly and efficiently with these problem cases. The Guidelines provide that private counsel may be provided in lieu of government counsel in certain special cases in which representation by government counsel would be awkward. We need not discuss the phenomenon in its entirety. Instead, for purposes of analysis, we will show why in some circumstances it does make sense for the Attorney General to discharge his representation function through private lawyers, and we will then consider the present case in its relation to the Revised Guidelines.

It is sometimes awkward from an institutional or professional standpoint for DOJ lawyers to provide personal representation for government employees, even though it is clear that representation of their interests will be in the interest of the United States. The best example

of that sort of case is the one involving multiple federal defendants who have differing views regarding the relevant facts. It may well be that *none* of these views differs in a material way from the view (if any) that the "United States" would have on the subject if the United States were a party to the case; and the ultimate outcome sought by each of the defendants may be perfectly consistent with the interests of the United States. Nonetheless, because of the differences regarding the facts, it might be professionally awkward for one DOJ lawyer or any one group of DOJ lawyers to represent all of the defendants; in such cases this Office has taken the view that the Attorney General has "implied authority" to provide representation through a mechanism that will enable him to resolve the professional difficulty. In particular, using his general authority to contract for services necessary in the performance of his statutory functions, he can hire private lawyers to do indirectly what it would be awkward for DOJ lawyers to do directly.

A far more troubling class of cases in which private representation is sometimes provided are those in which it is clear that the personal interests of the employee-defendant actually diverge from the interests of the United States with regard to some material issue of fact or law involved in the litigation. This is the class of cases most directly relevant to your inquiry, and to that class we now turn.

Section 50.15(a)(10) of the Revised Guidelines contemplates that cases will arise in which "adequate" representation of the personal interests of a government employee may require "the making of an argument which conflicts with a governmental position."* The Guidelines provide that, in such a case, the conflict between "the governmental position" and the "argument" to be made on the employee's behalf need not prevent the Department from providing the employee with representation. It may yet be possible to determine that representation of the employee will serve the interests of the United States; and if that is the case, the Guidelines provide that the Department can do one of two things: (1) it can tender representation through a DOJ lawyer (if the employee, after being advised of the government's conflicting position with regard to the "argument," consents to representation on the government's terms), or (2) it can provide representation through a private lawyer, who will represent the employee at government expense and make the argument that the government lawyer cannot make.

The problem lies with the second option. How can it be in the interest of the United States (and therefore within the province of the Attorney General under § 515 *et seq.*) to finance an argument in court

---

*NOTE: As published in the Code of Federal Regulations in 1982, the Representation Guidelines refer to "the assertion of a position that conflicts with the interests of the United States . . . ." See 28 C.F.R. § 50.15(a)(10) (1982). Ed.

that is inconsistent with the position that the United States itself has taken or would take with respect to the matter in issue? For purposes of this memorandum, we will not attempt to answer that question in general terms. We are aware that in difficult and appealing circumstances, § 50.15(a)(10) has been invoked to provide government employees with private lawyers who have made arguments inconsistent with positions taken by the United States. But our most recent opinion on this subject suggests that it is not within the province of this Department to provide employees with representation directly or indirectly for the purpose of opposing the government itself in federal criminal proceedings, and we reasoned in that memorandum that providing a personal defense for an employee in a civil case is justified only to the extent that the defense is tantamount to a defense of the government itself. The Attorney General represents government employees, directly or indirectly, only to the extent that their interests coincide with the interests of the United States.

However the issue may be resolved in other contexts, the present case presents the issue in a most extreme setting. This case may well be distinguishable in a qualitative sense from a great many of the other cases in which the question can arise. Here we are being asked to decide not merely if this Department may finance a collateral argument that would differ in some respect from an argument the "United States" would make in pursuit of the same result or in defense of the same claim. Rather, we are being asked to decide that the Department may finance an argument that would be made in support of *a claim against the United States.* That is what the Department would be doing if it provided private representation on the fee award issue. We would be paying a lawyer to argue either that the plaintiffs' claim for fees under § 1988 is good against the United States, or that the defendants themselves have a legal claim against the United States for indemnity. or contribution for fees taxed against them. It is purely a question of sovereign immunity: as between the defendants and the United States, who pays?

There may indeed be circumstances in which Congress could con-clude that it would serve the larger interests of the United States to finance legal claims against the United States. Congress could, for example, establish a legal aid society for government employees for the purpose among others of supporting a legal assault on the doctrine of sovereign immunity. But if it would be possible to make a legislative choice in favor of these claimants, it would nonetheless be very diffi-cult, in our view, to conclude that that sort of choice is within the scope of the Attorney General's implied authority under the statutes that define his office. His function, as we read those statutes, is to use the resources of this Department to oppose legal claims against the United States where, as here, he believes them to be without legal

merit. It is not his function to support such claims. For that reason we think it would be inappropriate to construe the Revised Guidelines as authorizing the Civil Division to pay private lawyers to represent government employees in connection with the support or assertion of claims such as the claim involved here. We think it would be inappropriate for the Attorney General to provide the federal defendants with private representation for the purpose of attacking the United States on the fee award issue.

We have three additional observations to make before moving to your second question. First, our analysis has turned thus far on an interpretation of the statutes that define the Attorney General's litigating function, 28 U.S.C. § 515 *et seq.* This analysis is appropriate in our view, since our task is to construe the Representation Guidelines, and those Guidelines are designed to define the Attorney General's litigating function in civil cases involving government employees.

Second, it makes no difference for purposes of this analysis that the defendants in the present case are employees or former employees of the Department of Justice. Absent a specific statute that alters the usual arrangement, the Attorney General's authority to represent the personal interests of government employees in civil litigation (directly or indirectly) does not vary under § 515 *et seq.* from agency to agency, and the limitations on his authority are the same in each case. Under § 515 *et seq.*, the Attorney General's authority to provide representation for DOJ employees who are sued personally in a civil case is no different from his authority to provide representation for the employees of, say, the Department of State.

Finally, we are mindful that the Attorney General is not simply a litigator. He has important functions other than those prescribed in § 515 *et seq.* He is the head of a large executive department; and like any. department head he has general authority, subject to appropriations, to make contracts and pay expenses that must be made and paid if his department is to run as it should. We endorse the principle, recognized on occasion by the Comptroller General, that general executive authority of this sort may be invoked from time to time to permit an agency to reimburse its own employees for personal expenses incurred by them as a necessary consequence of faithful and lawful performance of their official duties. Indeed, although we express no firm view on this point, we see no reason why authority of this sort cannot be invoked by this or any other agency to reimburse blameless employees for personal expenses incurred by them *in litigation,* provided it is clear on the facts of each case that the expenses were incurred as a necessary consequence of due performance of an official duty.

But even if that principle is valid, we think it has no application in the present context. The question is whether this Department could reimburse the defendants for the cost of arguing in court that the

United States can be held liable for payment of attorney fees under § 1988. An argument of that sort would not serve to establish the legality of any official action by these defendants or by this agency; it would, if accepted, enlarge the legal liabilities of the United States. It would not directly support any position taken by the government; on the contrary, it would be advanced in opposition to the position taken by this agency in this very case. It might or might not serve the personal interests of the defendants; but if it did serve them, it would do so in precisely the same way that any private claim against the public fisc (*e.g.,* a claim for indemnity or contribution) might serve the interests of government employees in circumstances in which the question is ultimately one of substituting public for private liability. It is a claim that they are fully entitled to make, but we think it would be very difficult to regard it as a claim that they must make as a necessary consequence of the duties cast upon them by their public employment, and it would therefore be difficult to regard the attendant expense as an expense they must "necessarily" incur within the meaning of the reimbursement rule.

## II.

You have advised the defendants: (1) that the Department will withdraw as their counsel in this phase of the case if they decide that they should lend their support to the claim that the United States may be held liable for the fee award (either to the plaintiffs directly or to themselves by way of indemnity or contribution); (2) that in any event, the United States will attempt to intervene in the case to support the position that the award against the United States was improper; but (3) that DOJ attorneys will continue to represent them if they desire the representation to continue and agree in writing that DOJ attorneys will be free to take the position that the fee award cannot be taxed against the United States. You have also advised the defendants that a failure on their part to oppose the position taken by the United States in this case may later be regarded by a court as the equivalent of a waiver of their right, if any, to claim that the United States is liable to anyone (including them) for any part of the fee award.

You have asked whether, in our view, the option described in (3) presents any substantial ethical difficulty. For the reasons given below, we think it does not.

It is for these defendants, acting with the advice of competent lawyers, to determine how they shall conduct their personal defense. Whether in the long run it will serve their personal interests to support the view that the United States can be held liable for payment of the fee award, or whether it will serve them better to stand now with the United States and be represented by DOJ lawyers in this phase of the case, is a question as to which this Department cannot properly advise

them, given the conflicting governmental position. The Civil Division has suggested that they should therefore consult private counsel, and the Civil Division has offered to withdraw if they conclude that the better course is to oppose the governmental position. The Civil Division has said that it will continue to represent them in this phase of the case only if they decide to go forward in a way that is consistent with the governmental position, but as regards the ethics of withdrawal versus the ethics of continued representation, it seems to us that having promised at the outset that the Department would represent their interests to the extent that those interests coincide with the interests of the United States, the ethical difficulty would lie with an adamant refusal to proceed with representation, not with a continuing effort to do what we promised to do at the outset, assuming of course that the defendants, after consultation with independent counsel, conclude that this is the better course.

Putting its unique features to one side, this case is very much like the routine civil action in which codefendants have a common interest in defeating all of the claims against all of them, even though each defendant may have an individual interest in giving reasons why his codefendants, not he, should respond in damages to the complaint. In that setting, it is clear that defendants are free as a matter of litigation strategy to subordinate the interests that divide them and to present a united front against the plaintiff as to the law or the facts. The choice is theirs; and if, after consultation with independent counsel, they choose to present a united front, there is no ethical difficulty in engaging one lawyer to present their united position. *Cf. Aetna Ins. Co.* v. *United States,* 570 F.2d 1197 (4th Cir. 1978).

We do not know how the defendants will be advised in this case, but it is at least possible they will conclude that they will stand a better chance of escaping ultimate liability for payment of a fee award if they support the government's position and establish that there is no deep pocket from which part of the award can be paid; and in any event, they may conclude that they simply do not wish to oppose the government on this point. They are loyal employees. That, in essence, is their defense on the merits.

We have one or two additional observations to make. We express no view on the general question whether it is necessary or desirable to analyze this particular ethical problem by reference to the settled principles that govern the representation of "differing interests" by private attorneys. *See* Canon 5 and DR 5–105. This Office frequently draws upon those and other private-law principles in our effort to provide guidance to the Department in ethical matters; and it is true of course that by virtue of our own regulations the Code of Professional Responsibility governs our conduct here to the extent that the Code attempts to deal with the kinds of problems that confront us as government

536

lawyers. But we need to keep in mind that we are often called upon to resolve representation questions that involve considerations quite different from those that are usually involved in private cases. Among these "different considerations" are the statutes that establish the office of the Attorney General and define his litigating and counseling functions. As we have suggested in part I of this opinion, these statutes impose overriding substantive limitations on what the Attorney General and the attorneys who work under him may and may not do in court.

Canon 5 and DR 5–105 contemplate that there is a limited class of cases in which a lawyer may undertake to represent the "differing interests" of "multiple clients." He may do this only if: (1) it is "obvious" that he can adequately represent the interest of each, and (2) each client consents to the representation "after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." In other words, the rule envisions a situation in which a lawyer attempts to provide "adequate" representation for all of the interests of more than one client, even though there may be differences as between two or more of those interests. The rule does *not* contemplate a case of the kind presented here: a case in which a lawyer who is also an officer of the government (the Attorney General) undertakes to discharge a statutory duty to represent officers of the United States in civil litigation but, because of overriding statutory limitations on his authority, undertakes to represent their personal interests only to the extent that they coincide with the interests of the United States. He cannot and does not undertake to represent any personal interest that differs from the interests of the United States. He does not, in a word, undertake to represent "differing interests"; and he leaves it to the defendants, after consultation with independent counsel, to determine: (1) whether they do in fact have interests that differ from those of the United States; (2) whether their overall interests would be served by taking an independent course in the litigation under the representation of private counsel; or (3) whether their overall interests would be better served by adopting a strategy of alliance with the interests of the United States, as those interests are defined and represented by the Attorney General. If they choose the latter course, we think no ethical difficulty is presented by the Attorney General's willingness to accommodate their desire that he appear on their behalf to advance the interests that they hold in common with the United States. In the context of a case of this sort, representation of common interests after consultation with independent counsel is not representation of "differing interests," and in our view it threatens none of the dangers that Canon 5 is designed to prevent.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*
